UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN RODEN,

    Plaintiff,

v.

TIMOTHY MOREY, *et al.*,

    Defendants.

Case No. 19-cv-11963
Hon. Matthew F. Leitman

_____/

### ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 31) TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION (ECF No. 28); AND (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 26)

In this 42 U.S.C. § 1983 action, Plaintiff Sean Roden[1] alleges that, while she was incarcerated at the G. Robert Cotton Facility ("JCF") in Jackson, Michigan, Defendants Timothy Morey, Joel Salinas, Fredeane Artis, and Daniel Castilla violated her First and Fourteenth Amendment rights. On February 28, 2023, Defendants collectively moved for summary judgment on all of Roden's claims. (*See* Mot., ECF No. 26.) Although the assigned Magistrate Judge ordered Roden to respond to Defendants' motion, Roden failed to do so. Accordingly, the Magistrate

---

[1] Although Roden is classified as a male by the Michigan Department of Corrections and incarcerated in a population of male inmates, Roden identifies as a female, and the Court will refer to her by her preferred gender pronouns.

1

Judge issued a Report and Recommendation (the "R&R"), in which she recommended that the Court grant Defendants' motion. (*See* R&R, ECF No. 28.) Roden has now filed Objections to the R&R. (*See* Obj., ECF No. 31.) For the reasons explained below, Roden's Objections are **OVERRULED**. The Court therefore **ADOPTS** the recommended disposition of the R&R and **GRANTS** Defendants' Motion for Summary Judgment.

**I**

The events underlying Roden's Section 1983 claims occurred in early 2016, when Roden was in the custody of the Michigan Department of Corrections at JCF. This factual background is laid out in greater detail in the R&R. (*See* R&R, ECF No. 28, PageID.175-177.) In relevant part, Roden alleges that, in late 2015, she was harassed by two Corrections Officers (Defendants Castilla and Morey) for being a transgender woman. (*See* Compl., ECF No. 1, PageID.8.) She filed a complaint under the Prison Rape Elimination Act ("PREA") against Castilla in March 2016. (*See id.*, PageID.3.) According to Roden, Castilla and Morey then "fabricate[d]" a "class-one (1) misconduct report against [her] in retaliation for [her] complaints earlier lodged against Defendants." (*Id.*, PageID.4.) That Class I Misconduct Report charged Roden with sexual misconduct by kissing another inmate in the bathroom. (*See* Misconduct Report, ECF No. 1, PageID.13.) In connection with that report, Roden was interviewed by Defendant Salinas, a JCF Hearing Investigator. But

2

Roden insists that Salinas "refused to prepare Plaintiff Roden's Investigation as Plaintiff presented it." (*Id.*, PageID.3.)

Roden then filed (1) a grievance against Morey and Castilla for retaliation and (2) a separate grievance against Salinas for failing to adequately investigate the misconduct report. (*See id.*) Roden alleges that Salinas threatened to have her transferred shortly after she filed those grievances. (*See id.*)

On April 26, 2016, Roden appeared for a Class I Misconduct Hearing before an Administrative Law Judge (the "ALJ"). The ALJ was responsible for determining whether Roden was guilty of the sexual misconduct charge. (*See* Class I Misconduct Hearing Report, ECF No. 1, PageID.19-20.) At that hearing, Roden presented her defense to the charge. Roden said that she was in the TV room, not the bathroom, at the time of the alleged offense and that, in any event, Morey could not possibly have observed the alleged misconduct because he could not see into the bathroom from the hallway where he was patrolling. (*See id.*) Roden further argued that Salinas had not adequately investigated the allegations of sexual misconduct presented in the report prepared by Morey and Castilla, and Roden identified additional evidence that she wished to obtain in order to present a full defense. (*See id.*) According to the ALJ, Roden "state[d] that [s]he had to see the investigator the day after [s]he got the ticket and [s]he didn't get all [her] defense. [S]he was asked what additional information [s]he needed and [s]he stated that [s]he wanted a

3

statement from officer Michels." (*Id.*) The ALJ ultimately adjourned the hearing to give Roden an opportunity to collect the additional evidence that she requested (*See id.*) The ALJ also requested that the parties present additional evidence that the ALJ deemed relevant, such as "a diagram from officer Morey to show where he was located in relation to the bathroom." (*Id.*)

Two days later, on April 28, 2016, Roden confronted Defendant Artis, who at that time was the Acting Warden of JCF. Roden told Artis that Morey and Castilla had fabricated the misconduct charges against her. (*See* Compl., ECF No. 1, PageID.9.) According to Roden, Artis said "that her officers are professionals, that [Roden] was the problem, and that [Artis] was getting rid of the problem." (*Id.*) A day later, Roden was transferred from JCF to the Kinross Correctional Facility ("KCF"). (*See* Transfer Screen, ECF No. 1, PageID.15.)

The ALJ reconvened Roden's Class I Misconduct Hearing on May 4, 2016. (*See* Class I Misconduct Hearing Report, ECF No. 1, PageID.29.) The ALJ explained that (1) Roden had a sufficient opportunity to collect evidence and to present the defense that she wished to present and (2) Morey could see into the shower area:

> Hearing reconvened on 5/4/16 by videoconference with prisoner at KCF. Additional information from hearing investigation read and reviewed with prisoner, except for the confidential portions. Included is a photograph taken form the spot officer Morey was at, held confidential to protect the safety and security of the institution and

4

> prevent the prisoner [from] knowing where the location is; two pages from officer Michels; one page from officer Morey and a diagram drawn by him showing where he was located, both held confidential to prevent release of the location; the three videos showing prisoner Roden in health care, center yard returning to F unit and on the upper level of F unit (right side). These videos are held confidential to prevent release of fixed camera locations, limitations and capabilities. The contents were generally summarized for the prisoner. The prisoner indicates that the officer says he had direct eye contact with [her] and questions how he would directly observe [her] do anything. [S]he states that Morey is a liar and it didn't happen. [S]he states that Morey hides and tries to sneak on people. [S]he states that [s]he can't form a defense because [s]he doesn't know where Morey was at. [S]he states that Morey didn't even tell the officer in the unit.
>
> I find that the prisoner was able to mount a defense and that this hearing officer determined through confidential information that the officer could see into the shower area. The prisoner could not provide any way that [her] due process was violated by keeping the location confidential. [S]he simply stated that it was. As [s]he could not provide any way that [s]he was prejudiced by this information remaining confidential, I find no due process violation. The prisoner was informed of such. [S]he was informed of the decision and sanctions at the conclusion of the hearing.

(*Id.*, PageID.20.) Based on the multiple statements from correctional officers, as well as photographic and video evidence presented during the hearing, the ALJ found Roden guilty of the sexual misconduct charge filed against her. (*See id.*)

5

**B**

On July 1, 2019, Roden filed this *pro se* civil-rights action against the Defendants. (*See* Compl., ECF No. 1.) She brings a claim of First Amendment retaliation against Castilla and Morey for fabricating and filing the misconduct report against her, a claim of First Amendment retaliatory transfer against all four Defendants, and a due process claim against Salinas. (*See id.*, PageID.4.) After Roden filed her Complaint, the Court referred this action to the assigned Magistrate Judge for all pre-trial proceedings. (*See* Order, ECF No. 12.)

On February 28, 2023, Defendants moved for summary judgment on all of Roden's claims. (*See* Mot., ECF No. 26.) Among other things, Defendants argued that Roden could not establish her First Amendment retaliation claim against Morey and Castilla for issuing the misconduct report because she could not demonstrate causation. (*See id.*, PageID.100.) Defendants also asserted that Roden's retaliatory transfer claim failed because she failed to establish that her transfer constituted an actionable "adverse action." (*Id.*, PageID.104.) Finally, Defendants said that Roden's due process claim failed because that claim did not implicate any protected liberty interest and because Roden received all the process to which she was entitled. (*See id.*, PageID.111-112.) The Magistrate Judge ordered Roden to respond to Defendants' motion, but Roden failed to do so. (*See* Order, ECF No. 27.)

6

On April 26, 2023, the Magistrate Judge issued the R&R in which she recommended that the Court grant Defendants' motion and enter judgment against Roden on all three of Roden's claims. (*See* R&R, ECF No. 28.) The Court will recount the bases underlying those recommendations in greater detail below.

Roden filed Objections to the R&R on June 16, 2023. (*See* Obj., ECF No. 31.) Roden's Objections were limited to two narrow arguments, which the Court describes in greater detail below.

## II

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions de novo. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

III

A

The Court begins with Roden's claim that Defendants Castilla and Morey retaliated against her in violation of the First Amendment when they fabricated a Class 1 Misconduct Report against her. To prevail on her retaliation claim, Roden must establish that: "(1) [she] engaged in protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that action; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [her] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In the R&R, the Magistrate Judge concluded that Roden's retaliation claim failed as a matter of law because Roden was found guilty of the misconduct alleged in the report on which the retaliation claim was based. (*See* R&R, ECF No. 28, PageID.180.) In reaching that conclusion, the Magistrate Judge relied upon cases applying what has come to be known as the "checkmate doctrine" – a doctrine

8

holding that an inmate cannot prevail on a retaliation claim based upon the filing of a grievance where the inmate has been found guilty of the infraction cited in the grievance.

Roden objects to the Magistrate Judge's reliance on the checkmate doctrine. (*See* Obj., ECF No 31, PageID.195.) According to Roden, that doctrine was rejected by the Sixth Circuit in *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). The Court agrees with Roden that her retaliation claim should not be dismissed under the checkmate doctrine. However, Court will nonetheless overrule Roden's objection and grant summary judgment against Roden on her retaliation claim for two independent reasons.

First, Roden's arguments based upon *Maben* and her opposition to the checkmate doctrine come too late. Roden failed to present those contentions in opposition to Defendants' motion for summary judgment. Indeed, she failed to respond to that motion even after the Magistrate Judge ordered her to do so. And she may not "assert a new argument in objections to a report and recommendation." *Rogan v. Tomlinson*, 2021 WL 1105293, at *3 (E.D. Mich. Mar. 23, 2021) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)); *see also Reed v. Swanson*, 2022 WL 4598501, at *7 (E.D. Mich. Sep. 30, 2022) (collecting cases). Because Roden failed to make any arguments in opposition to Defendants' motion for summary judgment on her retaliation claim, the Court declines to consider her

9

objection to the recommendation that the Court grant summary judgment on that claim.

Second (and in any event), Roden's retaliation claim fails on the merits. While Roden is correct that the Sixth Circuit has rejected rigid application of the "checkmate doctrine," *see Maben,* 887 F.3d at 263, the ALJ's finding that Roden committed sexual misconduct – as alleged in the grievance against her – is still fatal to her retaliation claim under the framework applied by the Sixth Circuit.

In *Maben*, the Sixth Circuit held that a factual finding in prison disciplinary hearing for a serious misconduct violation may be given preclusive effect in a later federal civil action if: "(1) the state agency acted in a judicial capacity; (2) the hearing officer resolved a disputed issue of fact that was properly before it; (3) the prisoner had an adequate opportunity to litigate the factual dispute." *Id.* at 259 (internal quotations and citations omitted). Here, the ALJ's finding that Roden committed sexual misconduct is entitled to preclusive effect in this action because all three *Maben* elements are satisfied.

First, Roden received a hearing before a neutral ALJ who acted in a judicial capacity. (*See* Class I Misconduct Hearing Report, ECF No. 1, PageID.19-20.) Second, the ALJ resolved the factual dispute as to whether Roden committed sexual misconduct. (*See id.*) Indeed, that factual dispute was the central issue that the ALJ was asked to resolve in the hearing. (*See id.*) Finally, Roden had an adequate

10

opportunity to litigate the factual dispute over whether she committed sexual misconduct. The ALJ convened a hearing to address the dispute, identified the evidence against Roden, and then adjourned the hearing to allow Roden to gather additional evidence to support her defense. Under these circumstances, the ALJ's finding that Roden committed sexual misconduct is entitled to preclusive effect here.

And that finding is fatal to Roden's retaliation claim. That claim rests upon her allegation that Morey and Castilla "fabricate[d]" the accusation of sexual misconduct against her. (Compl., ECF No. 1, PageID.3.) But the ALJ's finding that Roden *did* commit sexual misconduct precludes Roden from establishing here that the sexual misconduct allegation against her was fabricated. Thus, the ALJ's finding is fatal to her retaliation claim, and Defendants are entitled to summary judgment on that claim.

**B**

The Court next turns to Roden's claim that "Defendants Castilla, Morey, Salinas, and Artis violated Plaintiff[']s First Amendment Rights by conspiring together to have Plaintiff transferred to the Upper Peninsula in retaliation for all of Plaintiff[']s complaints and grievances lodged against Defendants Castilla, Morey, and Salinas." (Compl., ECF No. 1, PageID.4.) In the R&R, the Magistrate Judge recommended that the Court enter judgment against Roden on her retaliatory transfer claim because Roden failed to establish that she suffered any adverse action. (*See*

11

R&R, ECF No. 28, PageID.181-182.)  Citing case law from this Court, the Magistrate explained that a transfer from one prison facility to another prison facility at the same security level does not constitute an actionable "adverse action" unless it is accompanied by additional, reasonably foreseeable negative consequences. (*See id.*)  The Magistrate Judge then concluded that Roden's transfer did not amount to an adverse action because Roden had failed to identify "any cognizable negative consequence of constitutional magnitude." (*Id.*, PageID.182.)

In her Objections, Roden asserts that her transfer from JCF to KCF was an "adverse action" because she lost a number of important privileges as a result of the transfer.  Roden says:

> Plaintiff, however, did suffer adverse damage due to the retaliatory transfer.  Plaintiff, at the time of transfer, was currently enrolled in the Michigan Braille Transcribing Fund, (See enclosed copy of Enrollment Verification).  Upon completion of the transcribing fund, Plaintiff would have been guaranteed an above-average salaried career position mandated by the National Alliance on the American First-Step Act for the Formally Incarcerated Returning Citizens.
>
> Prisoners Enrolled in the Michigan Braille Transcribing Fund have Institutional Holds placed upon them directly from the facility where a prisoner is housed that offers the Program.  Furthermore, at the time of the "retaliatory transfer", Plaintiff had recently been placed on a lead position in the facility's dining hall, which happened to be considered a prestigious detailed work assignment.  Plaintiff was also transferred outside his state geographical home region where [Plaintiff] could receive visits from [Plaintiff's] family in order to maintain strong familial

12

>  connections. Such placement is a measurement implemented by the MDOC to facilitate in the growth of an incarcerated individual's rehabilitation through family bonding. *See Siggers-El v. Berlow*, 412 F.3d 693, 701-702 (6th Cir. 2005).

(Obj., ECF No. 31, PageID.195-196.)

The Court overrules this objection and will grant summary judgment in favor of Defendants on Roden's retaliatory transfer clam for two independent reasons. First, Roden failed to raise the arguments in the objection in response to Defendants' motion for summary judgment. As explained above, she may not present these arguments for the first time in her objections.

Second (and in any event), Roden's retaliatory transfer claim fails on the merits. As Roden acknowledges, a transfer from one prison facility to another prison facility with the same security level does not ordinarily constitute an adverse action. *See, e.g.*, *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."). Such a transfer amounts to an actionable adverse action only where the inmate suffers "foreseeable [negative] consequences" as a result of the transfer. *Id.* at 702. And "only those consequences that inextricably follow from a defendant's alleged retaliatory conduct (a transfer

13

from filling out a transfer screen, for instance) would be considered in determining whether the plaintiff suffered an adverse action." *Id.*

Roden has not presented *evidence* to sustain her claim that her transfer amounted to an adverse action. While she asserts that the transfer impacted her in a number of adverse ways, she offers no proof to support her contentions. For example, while she presents evidence that she was enrolled in the Braille Transcription program at JCF, she presents no evidence that the program was unavailable to her at KCF. And while Roden insists that her position in the JCF dining room was "prestigious," she has provided no evidence that a similar position was unavailable to her at KCF. Likewise, while Roden asserts that the transfer has made it more difficult for her family to visit her, she offers no evidence as to where her family lives nor any proof that that they actually visited her at JCF before her transfer. For all of these reasons, the Court concludes that Roden has not presented sufficient evidence to sustain her claim that her transfer amounted to an adverse action.

## C

Finally, the Court turns to Roden's due process claim that "Defendant Salinas violated Plaintiff's Fourteenth Amendment Right to Due Process of Law by willfully and deliberately refusing to comply with Plaintiff's requested defense of class-one (1) misconduct, which ultimately resulted in Plaintiff's being found guilty and

receiving additional time added to her sentence." (Compl., ECF No. 1, PageID.4.) In her R&R, the Magistrate Judge recommended that the Court enter judgment against Roden on this claim because Roden received all the process that she was entitled to receive. (*See* R&R, ECF No. 28, PageID.183.)

Roden failed to object to the Magistrate Judge's recommendation that the Court enter judgment against her on her due process claim. As explained above, the failure to object to a report and recommendation releases the Court from its duty to independently review the matter. *See Thomas*, 474 U.S. at 149. Likewise, the failure to object waives any further right to appeal. *See Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Accordingly, because Roden failed to object to the Magistrate Judge's recommendation on this claim in any way, the Court concludes that Defendants are entitled to summary judgment on Roden's due process claim.

## IV

For the reasons explained above, Roden's Objections (ECF No. 31) to the R&R are **OVERRULED**, and the Court **ADOPTS** the recommended disposition of the R&R.

Defendants' Motion for Summary Judgment (ECF No. 26) is therefore **GRANTED.**

**IT IS SO ORDERED.**

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: July 11, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 11, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan  
Case Manager  
(313) 234-5126